UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL THOMAS DEFRANCESCO,

                        Plaintiff,

                                                                                                                                                                  Case # 16-CV-6575-FPG

v.

                                                                                                                                                                 DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.

      Michael Thomas Defrancesco ("Defrancesco" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

      Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

      On October 24 and 26, 2012, Defrancesco applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 157-64. He alleged that he had been disabled since October 20,

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

1

2011 due to epilepsy and seizures. Tr. 203. On September 12, 2014, Defrancesco and a vocational expert appeared and testified at a hearing before Administrative Law Judge Brian Kane ("the ALJ"). Tr. 28-72. On January 23, 2015, the ALJ issued a decision finding that Defrancesco was not disabled within the meaning of the Act. Tr. 14-23. On June 23, 2016, the Appeals Council denied Defrancesco's request for review. Tr. 1-4. Thereafter, Defrancesco commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

2

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Defrancesco's claim for benefits under the process described above. At step one, the ALJ found that Defrancesco had not engaged in substantial gainful activity since the alleged onset date. Tr. 16. At step two, the ALJ found that Defrancesco has seizure disorder, which constitutes a severe impairment. Tr. 16-18. At step three, the ALJ found that this impairment did not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined that Defrancesco retained the RFC to perform the full range of light work.[3] Tr. 19-21. At step four, the ALJ found that Defrancesco cannot perform his past relevant work. Tr. 21-22. At step five, the ALJ relied on the Medical-Vocational Guidelines and found that Defrancesco can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 22-23. Specifically, Medical-Vocational Rule 202.18 directed a finding of "not disabled." *Id.* Accordingly, the ALJ concluded that Defrancesco was not "disabled" under the Act. Tr. 23.

## II. Analysis

Defrancesco argues that remand is required because the ALJ's RFC assessment is not supported by substantial evidence.[4] ECF No. 12-1 at 10-16; ECF No. 14 at 1-2. Specifically, Defrancesco asserts that the ALJ erred when he rejected the only physical medical opinion of

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] Defrancesco advances another argument that he believes warrants reversal of the Commissioner's decision. ECF No. 12-1 at 16-23. However, the Court will not address that argument because it disposes of this matter based on the ALJ's improper reliance on his own lay opinion to determine Defrancesco's RFC.

record and then relied on his own lay opinion to determine that he could perform the full range of light work. *Id.* The Court agrees.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted). Depending on the circumstances, like when the medical evidence shows only minor physical impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Id.*

Moreover, the ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his or her application. 20 C.F.R. §§ 404.1512(b), 416.912(b). The ALJ must "make every reasonable effort" to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so. *Id.* Remand is warranted if the ALJ fails to fulfill his or her duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

5

Here, the only physical medical opinion of record was provided by Michael Miller, M.D. Tr. 346-49. Dr. Miller indicated that Defrancesco has generalized tonic-clonic seizures that occur two to three times per week. Tr. 346. He noted that Defrancesco loses consciousness during a seizure and that the seizures typically last three minutes with a postictal period. *Id.* Dr. Miller indicated that Defrancesco does not always have warning of an impending seizure, however, he often has a warning of about one to three minutes. *Id.* Dr. Miller explained that Defrancesco cannot always take safety precautions when he feels a seizure coming on, that the seizures do not occur at a particular time of the day, and that the seizures do not have any specific precipitating factors. *Id.* Dr. Miller also noted that Defrancesco's postictal manifestations include confusion and memory problems that last for a variable amount of time. Tr. 347. He indicated that Defrancesco's seizures temporarily completely interfere with his daily activities because he loses consciousness and then experiences a postictal period, and he noted that Defrancesco's seizures cause injury and fecal or urinary incontinence. *Id.*

Dr. Miller opined that Defrancesco will be "off task"—*i.e.*, unable to perform work and/or will be away from the work environment due to his limitations—25% of the workday. *Id.* He also opined that Defrancesco's seizures are likely to disrupt coworkers, will require him to receive more supervision than an unimpaired worker, and will preclude him from working at heights, operating power machinery, and operating a motor vehicle. Tr. 348. Dr. Miller indicated that Defrancesco will require unscheduled breaks during an eight-hour workday. *Id.* Specifically, he estimated that Defrancesco will need a one to two hour break two to three times per week. *Id.* Dr. Miller opined that Defrancesco is capable of low stress jobs. *Id.* Dr. Miller concluded that Defrancesco's impairments are likely to produce "good days" and "bad days" that will result in more than four absences from work per month. *Id.*

6

The ALJ's decision summarized Dr. Miller's opinion and afforded it only "little weight" because he found it "inconsistent with the medical evidence of record and unsupported by objective evidence." Tr. 21. Regardless of whether the ALJ properly discounted this opinion, his rejection of the only physical medical opinion in the record created an evidentiary gap that requires remand. *See, e.g.*, *Pryn v. Berryhill*, No. 16-CV-315-FPG, 2017 WL 1546479, at *4 (W.D.N.Y. May 1, 2017); *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original).

Because the ALJ rejected Dr. Miller's opinion, the record lacks any medical opinion as to Defrancesco's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. There is no medical opinion regarding his capacity to sit, stand, walk, or lift, which are necessary activities for light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Despite this, the ALJ somehow concluded that Defrancesco was capable of performing the full range of light work. Tr. 19-21. It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this determination without reliance on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor.").

The remainder of the ALJ's RFC analysis summarizes Defrancesco's testimony and various treatment notes. Tr. 19-21. These treatment notes document physical examination findings, several seizure episodes, hospital visits, and Defrancesco's medication regimen, but do not address how his impairments affect his ability to perform work-related functions. The ALJ

The ALJ's decision summarized Dr. Miller's opinion and afforded it only "little weight" because he found it "inconsistent with the medical evidence of record and unsupported by objective evidence." Tr. 21. Regardless of whether the ALJ properly discounted this opinion, his rejection of the only physical medical opinion in the record created an evidentiary gap that requires remand. *See, e.g.*, *Pryn v. Berryhill*, No. 16-CV-315-FPG, 2017 WL 1546479, at *4 (W.D.N.Y. May 1, 2017); *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original).

Because the ALJ rejected Dr. Miller's opinion, the record lacks any medical opinion as to Defrancesco's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. There is no medical opinion regarding his capacity to sit, stand, walk, or lift, which are necessary activities for light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Despite this, the ALJ somehow concluded that Defrancesco was capable of performing the full range of light work. Tr. 19-21. It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this determination without reliance on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor.").

The remainder of the ALJ's RFC analysis summarizes Defrancesco's testimony and various treatment notes. Tr. 19-21. These treatment notes document physical examination findings, several seizure episodes, hospital visits, and Defrancesco's medication regimen, but do not address how his impairments affect his ability to perform work-related functions. The ALJ

was not permitted to render a common sense judgment about Defrancesco's functional capacity despite his unpredictable seizure disorder based solely on these bare treatment notes. *See Palascak v. Colvin*, No. 1:11-CV-0592 (MAT), 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014) (noting that "this is not a case where the medical evidence shows 'relatively little physical impairment' such that the ALJ 'can render a common sense judgment about functional capacity'")

The ALJ's RFC analysis also fails to tie any of the medical evidence to the functional demands of light work. *Id.* Thus, without a function-by-function assessment relating this evidence to the requirements of light work or reliance on a medical source's opinion as to Defrancesco's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (noting that the ALJ is not required to perform an explicit function-by-function RFC analysis but that "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review") (citation omitted).

For the reasons stated, the Court finds that the ALJ's RFC assessment is not supported by substantial evidence. *See Palascak*, 2014 WL 1920510, at *9 ("[B]ecause there is no medical source opinion to support the ALJ's residual functional capacity finding, the Court concludes that it lacks substantial evidentiary support."). Accordingly, remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124

(2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

       IT IS SO ORDERED.

Dated: October 20, 2017
       Rochester, New York

                                                    _____
                                                    HON. FRANK P. GERACI, JR.
                                                    Chief Judge
                                                    United States District Court